IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2012

## STATE OF TENNESSEE v. CHRISTOPHER M. FOSTER

**Direct Appeal from the Circuit Court for Blount County**
**No. C-19025        David R. Duggan, Judge**

_____

**No. E2011-00589-CCA-R3-CD - Filed February 22, 2012**

_____

The appellant, Christopher M. Foster, pled guilty in the Blount County Circuit Court to robbery and received a five-year sentence to be served on supervised probation. Subsequently, the trial court revoked his probation and ordered that he serve his sentence in confinement. On appeal, the appellant contends that the trial court abused its discretion by not granting him another alternative sentence. Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and JEFFERY S. BIVINS, JJ., joined.

Charles Carpenter, Maryville, Tennessee, for appellant, Christopher M. Foster.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Betsy Brockman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On July 23, 2010, the appellant pled guilty to robbery, a Class C felony. Pursuant to the plea agreement, the appellant received a five-year sentence to be served on supervised probation. The appellant also was to have no contact with the victim and pay restitution. On December 1, 2010, the appellant's probation officer filed a Probation Violation Report, alleging that the appellant violated his probation by being arrested, failing to report his

arrests, failing to obtain employment, and failing to make a court cost agreement or pay restitution.

At the appellant's February 11, 2011 probation revocation hearing, Terry Fowlkes, the appellant's probation officer, testified that the appellant was placed on probation on July 23, 2010, and that she had her initial interview with him on August 3, 2010. She said that at some point, she learned "through our Knoxville office" about the appellant's new arrests. The appellant had been charged with disorderly conduct on October 12, 2010, and misdemeanor theft on October 27, 2010. He was convicted of the offenses. On December 3, 2010, the appellant was charged with criminal impersonation; resisting a stop, frisk, halt, or search; and criminal trespass. The appellant was convicted of criminal trespass, but the other two charges were dismissed. Fowlkes said that in addition to the appellant's new charges, he also violated his probation by failing to obtain employment and by not entering into an agreement to pay court costs or restitution.

On cross-examination, Fowlkes testified that she learned about the appellant's new arrests shortly after they occurred. She said she last met with the appellant in person in November 2010. During the meeting, the appellant filled out a questionnaire. Fowlkes said that the questionnaire asked if the appellant had been arrested since their last meeting and that the appellant did not "mark" on the form. However, she and the appellant discussed his arrests during the meeting. In December 2010, Fowlkes filed the probation violation report.

The appellant acknowledged that he was arrested and convicted of some of the new offenses. However, this was his first probation violation. He said that he had been in custody since December 3, 2010, and asked that he be released back into the community. The appellant said that his aunt was willing to give him a job and that he would be doing cleaning, maintenance, and carpentry work for her. He acknowledged that having a job would allow him to pay court costs and restitution. He said that he and his fiancé had to be out of their home by February 28 but that they could stay with his father and grandmother.

The appellant testified that he was arrested for disorderly conduct "just for being loud in the car and making phone calls." He explained that he was in his sister's car and had to keep his foot on the gas pedal to keep the engine running. Someone telephoned the police and reported that the appellant was revving the engine. For the misdemeanor theft charge, the appellant borrowed a man's cellular telephone because his own phone was not working. The appellant forgot to give the phone back to the man, and the man reported it stolen. The police arrested the appellant. The day the appellant was released from jail, he telephoned his probation officer and told her about the arrests. He acknowledged, however, that she could have found out about the arrests prior to his call. The appellant said that he had turned in several employment applications. He surmised that he was not hired because of his criminal

history. The appellant had paid some of his probation fees but did not have any money to pay court costs. He said that he had never been on probation before, that he "messed up," and that his family needed him.

On cross-examination, the appellant acknowledged that he had not paid any probation fees since November 2010. He also acknowledged that he pled guilty to the new charges and that he had been on probation previously in Knox County. He said that he had filed a "social" order of protection against his fiancé but that they lived together because "we're allowed to be around each other." The appellant served three years in prison for a prior aggravated burglary conviction.

Judy Baker, the appellant's grandmother, testified for the appellant that she was not in good health and that the appellant was "a help" to her. She said that if the trial court released him from jail, he could live with her and help her around the house.

Toni Cooper, the appellant's aunt, testified that she had started managing an apartment complex, would hire the appellant, and had plenty of work for him. On cross-examination, Baker said that although the appellant did not have a driver's license, "his sister could probably transport him back and forth to work."

Carrie Harris, the appellant's fiancé, testified that she had a driver's license and a car and would be "[m]ore than happy" to drive the appellant to work. She said that she and the appellant "had some issues" previously and that a "social order of protection" was in place. However, they could still talk with each other and live together. She said, "He's just not allowed to do any physical, mental [harm], hold me against my will."

Angela McCowan, the appellant's sister, testified that their grandfather was a drug and alcohol counselor. If the court released the appellant from jail, he would be living with his grandfather and grandmother.

The trial court found that the appellant violated his probation by being arrested and convicted of disorderly conduct, misdemeanor theft, and criminal impersonation. The court also found that the appellant violated his probation by failing to report the first two arrests to his probation officer, by being unemployed, and by failing to make payments toward his court costs and restitution. The court said the appellant was "given an opportunity to stay out of jail" for the robbery conviction but began committing crimes almost immediately after he pled guilty. The trial court noted that despite the appellant's guilty pleas to the new charges, he suggested during the hearing that he was not guilty. The court also found the appellant not credible because he testified that he had not been on probation previously when he had

been on probation in Knox County. The trial court revoked the appellant's probation and ordered that he serve his five-year sentence in confinement with credit for time served.

## II. Analysis

The appellant challenges the trial court's ordering him to serve his sentence in confinement, arguing that the court should have granted him another alternative sentence. The State claims that the trial court properly ordered the appellant to serve his five-year sentence in confinement. We agree with the State.

Generally, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995). Upon revoking probation, a trial court has the authority to order the appellant to serve the original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

The appellant argues that the trial court abused its discretion by not considering the principles of sentencing in its decision to order him to serve his original sentence in confinement. However, the appellant admitted that he violated his probation. Therefore, the trial court could revoke his probation and order him to serve his sentence in confinement. In any event, the trial court's comments demonstrate that the court considered the principles of sentencing, particularly the appellant's lack of potential for rehabilitation, in denying his request for another alternative sentence.

## III. Conclusion

Based upon the record and the parties' briefs, we conclude that the trial court did not abuse its discretion by revoking the appellant's probation and ordering that his sentence be served in confinement. The judgment of the trial court is affirmed.

NORMA MCGEE OGLE, JUDGE